UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

In re:                                                    Case No.: 18-12211-7

    HAROLD F. JUNG and
    ALIA I. JUNG,

        Debtors.

---

    HAROLD F. JUNG,

        Plaintiff,

    v.                                                    Adversary No.: 18-52

    INTERNAL REVENUE SERVICE,

        Defendant.

---

## **MEMORANDUM DECISION**

The Internal Revenue Service ("IRS") issued Notices of Deficiency to Harold ("Harold") and Alia Jung ("Alia") (collectively, "the Jungs") for additional taxes and penalties owed for the tax years 2008 to 2013. Fourteen days after the second Notice, the Jungs filed a voluntary chapter 7.

Harold filed this adversary proceeding seeking to determine and discharge his tax liability and penalties.[1] The IRS moved to dismiss on the ground of lack of subject-matter jurisdiction. The Court denied the Motion to Dismiss and ordered the IRS to file an answer. The IRS filed its answer and, the next day, a Motion to Reconsider.

---

[1] The IRS asserted civil fraud penalties against only Harold. Alia is not a party to this adversary.

## BACKGROUND

The Jungs timely filed and paid their joint 2008 to 2013 income tax returns and self-reported tax liabilities. The IRS audited the Jungs' income tax returns. It determined the Jungs "had additional income tax deficiencies due to unreported business income." This also resulted in a determination that Harold is liable for civil fraud penalties.

The IRS issued a Notice of Deficiency to the Jungs for the deficiencies and penalties for the tax years 2008 through 2012. The IRS then issued a Notice of Deficiency for the deficiencies and penalties due for 2013. Neither Harold nor Alia filed a petition in the United States Tax Court to contest the deficiencies or penalties. After the second of the Notices, the Jungs filed a no asset chapter 7.

Harold filed an adversary proceeding seeking to determine and discharge his tax liability and penalties. The IRS moved to dismiss on the ground of lack of subject-matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). The IRS admits "[b]ankruptcy courts are authorized by statute to determine the dischargeability of a debtor's liabilities." But, the IRS says, the only issue for decision is whether Harold is liable for the deficiencies and penalties. So it argues dischargeability is not an issue. According to the IRS, "the liabilities and penalties are per se nondischargeable because they involve fraud."

The Court denied the Motion to Dismiss. Critical to the Court's decision was that Harold sought to discharge the taxes and penalties before any

assessment or determination by a court. The Court distinguished this case

from others finding lack of subject-matter jurisdiction over tax disputes where

dischargeability was not at issue, reasoning:

> In sum, this Court has jurisdiction. Dischargeability is a core
> proceeding. It is a substantive right that does not exist outside
> bankruptcy. Having assessed[2] tax and penalties, the IRS
> acknowledges there is a debt. If necessary, this Court can determine
> the amount of tax or penalties as part of the decision on
> dischargeability.

The IRS moved for reconsideration. It asks the Court to dismiss the

adversary for lack of subject-matter jurisdiction or, in the alternative, hold the

matter in abeyance pending a decision in *Matter of Bush*, No. 16-13244 (7th

Cir.). *Bush* was fully briefed and argued in April 2017.

It appears the IRS has changed its argument in the Motion to

Reconsider. Unlike in the Motion to Dismiss, the IRS says it has "proposed tax

deficiencies, including penalties, but there is no dispute that penalties are

discharged." ECF no. 27 at 2. It seems the IRS now concedes *all* penalties are

discharged. At the same time though it says "in the instant case, [the IRS] is

not arguing that *any* of the penalties are excepted from discharge") (emphasis

in original). *Id.* at 7.

The only issue in dispute according to the IRS is the legality of the

underlying tax:

> Fraud is relevant for the first four of the six tax years at issue (2008
> through 2011) only because, unless the tax returns were fraudulent,
> the statute of limitations on assessment expired long before the
> bankruptcy petition. Simply put, if there was no fraud, then there is

---

[2] In the interest of precision, no tax or penalties were assessed. Rather, Notices of
Deficiency listing amounts of additional tax and penalties were issued.

no tax liability in the first place. If there is no liability, there is nothing to discharge. And if there was fraud, then the liability is *ipso facto* excepted from discharge. For the last two of the six years at issue (2012 and 2013), the taxes could be assessed under an extended limitations period [pursuant to 26 U.S.C. § 6501(e)] that would cause them to be priority claims under 11 U.S.C. § 507(a)(8)(A)(iii) and thus excepted from discharge under § 523(a)(1)(A) if there was no fraud. And if there was fraud, § 523(a)(1)(C) would apply. So, either way – fraud or no fraud – the 2012 and 2013 taxes are nondischargeable (except that the fraud penalties are discharged).

*Id.* at 2.

The IRS questions the Court's competency to decide the tax issues. "[W]hen it comes to determining fraud on returns, the disputes are very complicated and almost never litigated in the bankruptcy courts." *Id.* at 10. The IRS notes many fraudulent tax return cases turn on contentions that the taxpayer relied on an accountant, the taxpayer's financial sophistication, and whether a taxpayer's professed ignorance of tax law is plausible and credible.

Finally, the IRS notes concern over the potential consequences of denying the Motion to Reconsider. If the "extremely fact-intensive" tax fraud issues applicable to six years of returns are tried before the Court, and an appellate court finds lack of jurisdiction after a trial, "the matter will have to be entirely re-tried in a court of competent jurisdiction." *Id.* at 3.

Harold opposes the Motion to Reconsider. He makes three main arguments. First, there is no explicit Federal Rule of Civil or Bankruptcy Procedure providing for a Motion to Reconsider. Movants typically cite Federal Rule of Civil Procedure 59(e) or 60(b). Any motion under Rule 59(e) is untimely. A motion under Rule 59(e) must be made within twenty-eight days of the

appealed decision. The Court issued its decision on February 21, 2019.

Twenty-eight days later was March 22. The IRS moved to Reconsider on April 2.

Harold also asserts a Motion to Reconsider under Rule 60(b) is improper.

Rule 60(b) allows a court to relieve parties from the effect of a *final* judgment.

He contends the Court's decision denying the Motion to Dismiss is

interlocutory. Thus, any Motion to Reconsider under Rule 60(b) necessarily

fails.

Second, he attacks the substance of the Motion to Reconsider. He argues

there is no substantive difference between the Motion to Dismiss and Motion to

Reconsider:

> The [Motion to Reconsider] has raised no new issues since the
> original decision. It simply repackages its prior arguments in a vain
> attempt to get the [C]ourt to change its mind. The [IRS] has failed to
> demonstrate that the [Court] has made a manifest error of fact or
> law, and has not brought forth any newly discovered fact that was
> previously undiscoverable and unavailable . . . .

ECF no. 31 at 5.

Finally, Harold states the Court should not await resolution of the *Bush*

case because it will not decide this case. "The *Bush* case relates to the

dischargeable nature of tax penalties assessed in relation to admittedly

nondischargeable taxes. This case claims that all the taxes and penalties are

dischargeable. The *Bush* decision, regardless of its outcome, will not be

determinative of this case." *Id.* at 4.

The IRS responds that Federal Rule of Civil Procedure 54, and not Rules

59 or 60, governs the Motion to Reconsider. A court may, under that Rule,

revisit an interlocutory order at any time. It also asserts Harold is mistaken

5

about which *Bush* proceeding the IRS refers. Finally, the IRS suggests Harold

has mischaracterized the tax issues presented.

**DISCUSSION**

A. <u>Rule 54(b)</u>.

Neither the Bankruptcy Rules nor the Federal Rules of Civil Procedure

explicitly provide for motions to reconsider. Courts hold that Federal Rule of

Civil Procedure 54(b) "is the proper vehicle for a motion to reconsider" an

interlocutory order. *Young v. Murphy*, 161 F.R.D. 61, 61 (N.D. Ill. 1995). Rule

54(b) provides that non-final orders "may be revised at any time before the

entry of a judgment adjudicating all the claims and all the parties' rights and

liabilities." Fed. R. Civ. P. 54(b). *See also Peterson v. Lindner*, 765 F.2d 698,

704 (7th Cir. 1985) (a judge has the power to reconsider an interlocutory order

any time before final judgment). "Disposition of a motion for reconsideration is

left to the discretion of the [bankruptcy] court, and its ruling will not be

reversed absent an abuse of that discretion." *Caisse Nationale de Credit*

*Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (citing *Billups v.*

*Methodist Hosp. of Chicago*, 922 F.2d 1300, 1305 (7th Cir. 1991)).

Courts in the Seventh Circuit impose an exacting standard in reviewing

motions for reconsideration under Rule 54(b). "Motions to reconsider should be

granted only in rare circumstances." *Caine v. Burge*, 897 F. Supp. 2d 714, 717

(N.D. Ill. 2012) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906

F.2d 1185, 1191 (7th Cir. 1990)). "While motions to reconsider are permitted,

however, they are disfavored." *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911 (N.D. Ill. 2015).

The purpose of Rule 54 is to allow the court to reconsider a previous order when doing so is "consonant with justice." *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole*, 90 F.3d at 1270.

The Seventh Circuit has held that "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced" earlier. *Id.* at 1269 (internal quotations and citations omitted). A manifest error of law or fact under this standard occurs when "the [c]ourt has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension." *Rochester Cheese Sales, Inc.*, 906 F.2d at 1191 (citation omitted). "A party asserting such an error bears a heavy burden . . . ." *Patrick*, 103 F. Supp. 3d at 912.

Central to the motion is the IRS's position this Court lacks subject-matter jurisdiction. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3), adopted by Fed. R. Bankr. P. 7012(b). A court has initial jurisdiction to

consider whether it has subject-matter jurisdiction for the purpose of Federal Rules of Bankruptcy Procedure 7012, adopting Fed. R. Civ. P. 12(b)(1) and 12(h)(3). *Henry v. United States*, 277 Fed. Appx. 429, 434 (5th Cir. 2008). The party alleging jurisdiction bears the burden of proof. *Nuveen Mun. Trust ex rel. Nuveen Yield Mun. Bond Fund v. Withumsmith Brown, P.C.*, 692 F.3d 283, 293 (3d Cir. 2012).

B. <u>Jurisdiction</u>.

"The jurisdiction of the bankruptcy courts . . . is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). Congress's general grant of bankruptcy jurisdiction is in section 1334 of title 28 of the U.S. Code. Congress vested the district courts with original but not exclusive jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Section 157 of title 28 allows a district court to refer to the bankruptcy court for the district "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." *Id.* § 157(a). The District Court has done so in this District.

Bankruptcy courts are more likely to have jurisdiction where the issue is a "core proceeding." The Seventh Circuit defines "core proceedings" as:

> A proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.

*Diamond Mortg. Corp. of Illinois v. Sugar*, 913 F.2d 1233, 1239 (7th Cir. 1990)

(citation omitted). Core proceedings include "determinations as to the

dischargeability of particular debts." 28 U.S.C. § 157(b)(2)(I).

   Courts view sections 1334 and 157 in the context of section 505(a) of the

Bankruptcy Code. Section 505(a) authorizes bankruptcy courts to decide

certain tax matters. This section provides:

> [T]he court may determine the amount or legality of any tax, any fine
> or penalty relating to a tax, or any addition to tax, whether or not
> previously assessed, whether or not paid, and whether or not
> contested before and adjudicated by a judicial or administrative
> tribunal of competent jurisdiction.
>
> The court may not so determine the amount of a tax, fine, penalty,
> or addition to tax if such amount or legality was contested before
> and adjudicated by a judicial or administrative tribunal of
> competent jurisdiction before the commencement of the case under
> this title.

11 U.S.C. § 505(a)(1)–(2).

   Most courts hold that section 505(a) is not an independent jurisdictional

basis outside 28 U.S.C. § 1334. *United States v. Zellers (In re CNS, Inc.)*, 255

B.R. 198, 201 (N.D. Ohio 2000) ("The subject matter jurisdiction of bankruptcy

courts over tax proceedings is derived from the jurisdiction of the federal

district courts under 28 U.S.C. § 1334 . . . ."). Thus, any exercise of jurisdiction

under section 505(a) must stem from one of the three components of 28 U.S.C.

§ 1334: arising under, arising in, or related to a bankruptcy case. Although

section 505(a) is not an independent grant of jurisdiction, courts recognize

"[t]he legislative history is indicative of Congressional intent to vest the

bankruptcy courts with a fairly broad jurisdictional grant under § 505(a)." *In re*

9

*Schmidt*, 205 B.R. 394, 397 (Bankr. N.D. Ill. 1997) (citing a 1977 Congressional House Report).

A proceeding "arises under" title 11, under sections 1334 and 157, when the action is based on a right or remedy explicitly provided in title 11. *Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994). Courts within the Seventh Circuit are split about whether a proceeding brought under section 505(a) "arises under" title 11. The Bankruptcy Court for the Northern District of Illinois opined, "The determination of tax liability provided for by § 505(a) 'arises under' the Bankruptcy Code." *In re UAL Corp.*, 336 B.R. 370, 371 (Bankr. N.D. Ill. 2006). The Southern District of Indiana held differently:

> By filing their motion under § 505, the Debtors are not invoking a "substantive right" under that statute, but rather a procedural one: They are seeking to have a substantive question of law that arises under the Internal Revenue Code decided by means of a procedure provided for by Title 11. Accordingly, the § 505 motion does not "arise under" Title 11.

*In re Bush*, No. 1:15-cv-1318-WTL-DKL, 2016 WL 4261867, at *3 (S.D. Ind. Aug. 12, 2016).

Each of these cases, however, involved a motion solely under section 505 to determine the amount of a tax. Neither invoked a decision under section 523 on dischargeability. This case does involve dischargeability and not merely determination of the amount of tax. The tax and penalties at issue have not been contested and adjudicated by a judicial or administrative tribunal. Those differences are material distinctions.

Courts often find no subject-matter jurisdiction where the dispute involves only the amount of tax liability. Bankruptcy courts are more likely to

have jurisdiction where dischargeability is at issue. *Kohl v. IRS (In re Kohl)*, 397 B.R. 840 (Bankr. N.D. Ohio 2008), involved joint debtors in a no asset chapter 7 case who filed an adversary seeking to discharge a tax penalty assessed against the debtor-wife. *Id.* at 840. The IRS moved to dismiss for lack of subject-matter jurisdiction on the ground a determination of tax liability would serve no purpose in a no asset chapter 7 case. *Id.* at 842. The court held it had jurisdiction because the debtor-wife sought a dischargeability determination, a substantive right granted by the Code. *Id.*

Unlike *Kohl*, in *Swain v. United States Dep't of Treasury (In re Swain)*, 437 B.R. 549 (Bankr. E.D. Mich. 2010), the court held there was no subject-matter jurisdiction over a tax dispute. There, the debtor and IRS agreed any debt owed to the IRS was nondischargeable. *Id.* at 556. The debtor did not seek to discharge a debt. *Id.* She sought only to determine the amount of tax liability. *Id.* As described in *Swain*:

> This proceeding is not one "arising under title 11" because it does not "involve a cause of action created or determined by a statutory provision of title 11." In substance, [the debtor] seeks only a determination that she owes no debt to the IRS for a tax penalty under 26 U.S.C. § 6672. The only matter in dispute . . . will be determined by federal non-bankruptcy law, namely the Internal Revenue Code (title 26), rather than any provision of the Bankruptcy Code (title 11).

*Id.* at 559–60 (citation omitted).

The Bankruptcy Court for the Northern District of Ohio succinctly contrasted the holdings in *Kohl* and *Swain*:

> [The *Kohl* court] examined the jurisdiction framework of §§ 1334 and 157(b) and found that, although the dischargeability action brought by the debtors did not directly impact their bankruptcy estate, it

11

> clearly invoked a substantive right created by federal bankruptcy
> law which could exist only within the confines of a case under title
> 11. *Kohl*, 397 B.R. at 843–44. In finding that it had jurisdiction to
> determine whether the debtor-wife owed a debt to the IRS, [the *Kohl*
> court] focused on § 157(b)(2)(I), unlike the court in *Swain*, 437 B.R.
> at 556, which had concluded the debtor in that case was not seeking
> a determination as to the dischargeability of a particular debt, but
> rather a determination that she owed no debt. [The *Kohl* court] noted
> that the existence of a debt is a key component in any
> dischargeability action and that the United States, having assessed
> the tax penalties against [the debtor-wife], had acknowledged this
> key component. *Kohl*, 397 B.R. at 844.

*Johnston v. City of Middletown (In re Johnston)*, 484 B.R. 698, 709–10 (Bankr.

S.D. Ohio 2012). The Court must determine whether dischargeability is at

issue.

Section 523(a)(1) of the Bankruptcy Code provides for the

nondischargeability of certain tax debts. Section 523(a)(1)(A) includes as

nondischargeable tax debts provided for in section 507(a)(8). In turn, section

507(a)(8) provides for priority payment of income taxes "not assessed before,

but assessable, . . . after, the commencement of the case." 11 U.S.C.

§ 507(a)(8)(A)(iii).

To determine in this case whether taxes for 2012 and 2013 are

assessable after commencement of the case, the Court must look to the

Internal Revenue Code ("IRC"). Generally, "the amount of any tax imposed by

[the IRC] shall be assessed within 3 years after the return was filed." 26 U.S.C.

§ 6501(a). Section 6501(e) of the IRC provides an exception:

> If the taxpayer omits from gross income an amount properly
> includable therein and such amount is in excess of 25 percent of the
> amount of gross income stated in the return, . . . the tax may be
> assessed, or a proceeding in court for collection of such tax may be

begun without assessment, at any time within 6 years after the return was filed.

*Id.* § 6501(e)(1)(A)(i).

"Assessment . . . refers to the official recording of a taxpayer's liability, which occurs after information relevant to the calculation of that liability is reported to the taxing authority." *Direct Mktg. Ass'n v. Brohl*, 135 S. Ct. 1124, 1130 (2015). The term "might also be understood more broadly to encompass the process by which that amount is calculated." *Id.*

IRS guidance sheds additional light on the relationship between a Notice of Deficiency and an assessment. A Notice of Deficiency is not an assessment. The purpose of a Notice of Deficiency is "[t]o ensure the taxpayer is formally notified of the IRS's intention to assess a tax deficiency."[3] After receiving a Notice of Deficiency, a taxpayer has ninety days to petition the Tax Court for a determination of the proposed deficiency. 26 U.S.C. § 6213(a). No assessment of a deficiency will be made until the expiration of the ninety-day period or, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. *Id.* In other words, sending a Notice of Deficiency is in effect a *proposed* assessment. *United States v. Zolla*, 724 F.2d 808, 810 (9th Cir. 1984) ("The IRS must send a notice of deficiency before it may assess, collect, or reduce to judgment most income tax liabilities."); *Bush v. United States*, 400

---

[3] Internal Revenue Manual § 4.8.9.2, *Notice of Deficiency Definition*, https://www.irs.gov/irm/part4/irm_04-008-009 (Aug. 11, 2016).

Fed. Appx. 556, 556 (Fed. Cir. 2010) (referring to a notice of deficiency as a

"pre-assessment deficiency notice"). As IRS guidance explains:

> A notice of deficiency, also called a "statutory notice of deficiency" or
> "90 day letter," is a legal notice in which the Commissioner
> determines the taxpayer's tax deficiency. IRC 6212 and IRC 6213
> require that the Service issue a notice of deficiency before assessing
> additional income tax, estate tax, gift tax and certain excise taxes
> unless the taxpayer agrees to the additional assessment.[4]

Section 523(a)(1)(C) provides an alternative method for a court to find tax

debts nondischargeable. A discharge does not apply to "any debt with respect

to which the debtor made a fraudulent return or willfully attempted in any

manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C).

Courts consistently hold the facts and circumstances required to prove a

fraudulent tax return, for dischargeability purposes, are the same as those

required to prove civil fraud penalties under the IRC. *See Sommers v. IRS (In re

Sommers)*, 209 B.R. 471, 481 (Bankr. N.D. Ill. 1997) (citing *Irvine v.

Commissioner (In re Irvine)*, 163 B.R. 983, 986 (Bankr. E.D. Pa. 1994) ("The

standard for proving 'fraud' under Section 523(a)(1)(C) is synonymous to the

standard for proving a civil fraud penalty under the [IRC].")); *Dagostini v. Wis.

Dep't of Revenue (In re Dagostini*, 482 B.R. 597, 600 (Bankr. E.D. Wis. 2012)

(same). "[I]t is clear that decisions of the United States Tax Court *may* be given

preclusive effect in nondischargeability actions under § 523(a)." *Olson v. Dep't.

of Treasury (In re Olson)*, 170 B.R. 161, 166 (Bankr. D.N.D. 1994) (emphasis

added).

---

[4] Internal Revenue Manual § 4.8.9.2, *Notice of Deficiency Definition*,
https://www.irs.gov/irm/part4/irm_04-008-009 (Aug. 11, 2016).

The Supreme Court has acknowledged collateral estoppel (issue preclusion) applies in discharge exception proceedings to bar the relitigation of factual or legal issues determined in a prior proceeding. *See Grogan v. Garner*, 498 U.S. 279, 284 (1991). "[A] bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action." *Id.* "The use of collateral estoppel in dischargeability proceedings under § 523(a) [should] be applied with great care since bankruptcy courts are vested with exclusive jurisdiction to determine the nondischargeability of debts." *Olson*, 170 B.R. at 165. "[T]he policy considerations attendant a bankruptcy discharge weigh strongly in favor of nonpreclusion." *Id.* at 166.

In its decision denying the Motion to Dismiss, the Court held the jurisdictional basis was the dischargeability at issue. The IRS posits the only issue to be decided is a determination of the amount of tax liability and any attendant penalties. The IRS says a Tax Court determination of liability will *per se* resolve any dischargeability issues. In the next breath, the IRS argues the time to review the deficiency notice may have expired so any opportunity for fact finding may have evaporated.

Any additional tax liability for 2012 and 2013 is nondischargeable under section 507(a)(8)(A)(iii), regardless of fraud. These taxes have not been assessed. Harold incorrectly equates a Notice of Deficiency with an assessment. That said, it is clear the taxes for 2012 and 2013 are *assessable* after commencement of the case. The Debtor filed bankruptcy on June 28, 2018.

The tax years at issue are 2012 and 2013. One cannot determine tax liability

for 2012 until the end of the calendar year, or January 1, 2013. Even assuming

Harold filed his tax return for 2012 on January 1, 2013, the six-year limitation

period under IRC § 6501(e) would expire on January 1, 2019. Thus, the IRS

could have assessed taxes for 2012 and 2013 after the petition date of June 28,

2018.

As noted, a Tax Court's decision on tax liability would likely decide the

dischargeability of liability for those years. That said, any additional taxes owed

are nondischargeable only if the returns for 2008-2011 were fraudulent. There

has been no decision by a Tax Court that there was fraud in any of the returns

at issue. There has simply been an audit by a Revenue Agent and,

subsequently, the IRS determined there were tax deficiencies and penalties

due.

Since courts consistently treat the requirements to show a fraudulent

return under the IRC the same as those under the Bankruptcy Code, a finding

of fraud by the Tax Court could have collateral estoppel effect before the Court.

But there has been no such finding by a Tax Court here.

The IRS glosses over the fact that the Debtor is seeking a dischargeability

determination. Dischargeability is at issue. As noted in the decision denying

the Motion to Dismiss, "[d]ischargeability is a core proceeding. It is a

substantive right that does not exist outside bankruptcy." It arises under title

11. Determination of tax liability is a prerequisite to determining

16

dischargeability. The broad grant of jurisdiction to hear tax disputes supports the exercise of jurisdiction.

This adversary is distinguishable from others finding a lack of subject-matter jurisdiction. In those cases, dischargeability was already decided. Those cases involved litigation solely over the *amount* of taxes owed. Those cases did not involve situations in which a Tax Court determination *could* decide dischargeability; dischargeability in fact had already been decided. Indeed, the *Swain* court found no jurisdiction because the parties agreed any debt was nondischargeable, while the *Kohl* court exercised jurisdiction because the debtor sought a dischargeability determination. Here, both the amount of the tax *and* dischargeability are at issue.

The IRS posits there was unreported business income and certain foreign income exclusions should be disallowed. Conceding the elements are the same whether under the Internal Revenue Code or the Bankruptcy Code, it is a question of whether the elements exist that would result in denial of the dischargeability of the amounts at issue. Tax Courts deal with these elements often according to the IRS. So do bankruptcy courts. The "badges of fraud" and the elements are not at all foreign or unfamiliar to this Court.

The Court has considerable experience hearing cases involving fraud, witness credibility, and the like. If Congress did not trust the ability of bankruptcy courts to decide tax issues, it would not have included section 505 in the Code. Congress could have easily given the Tax Court exclusive jurisdiction to decide tax issues. It did not.

17

C. <u>There is no new evidence or change in circumstances</u>.

Policy does not support granting the Motion to Reconsider.

Reconsideration is the exception, not the rule. It is meant to account for the

discovery of new evidence or a change in circumstance warranting a revisiting

of the prior decision. Here, the only change is the argument of the IRS. The

Motion to Dismiss explicitly states, "[T]he liabilities *and penalties* are per se

nondischargeable because they involve fraud." ECF no. 15 at 6 (emphasis

added). To strip the Court of jurisdiction, the IRS, in its Motion to Reconsider,

*now* concedes all penalties *are* dischargeable. Case law makes clear it is not

appropriate for a litigant to use a Motion to Reconsider as a mechanism to

change his argument or argue what he could have or should have argued

previously.

 Dismissing the case is prejudicial to Harold. This adversary has been

pending since August 2018. The summons and complaint were served on

August 17, 2018. The answer was due on August 25. A week before that date,

the IRS moved for a 45-day extension of time to gather information to answer

or respond. The request was unopposed. The time was extended to November

9. On November 8, the IRS asked for another extension because the complaint

"raises complex tax and bankruptcy related issues which require extensive

analysis. [And] some additional information from the IRS" was required. The

Jungs consented to a 14-day extension. Then, on November 20 the Motion to

Dismiss was filed. The motion was denied February 21 and 19 days later the

answer was filed.

Harold filed this adversary before the expiration of the time to contest the Notices of Deficiency before the Tax Court. Dismissing the case requires Harold to seek a determination of dischargeability in another forum. But the IRS now suggests that opportunity may have passed. If the Court dismisses this case, it is unclear if Harold will ever have the opportunity to litigate this issue. To deny Harold this opportunity because of the motion practice of opposing counsel is highly prejudicial and a violation of Harold's due process.

The parties have exchanged pleadings. A trial date has been set for November 15. Awaiting a decision in *Bush* generates the possibility of additional delay and may well not apply here because of the differing facts. There is value to all parties to have a determination of dischargeability sooner rather than later.

The Court rendered a decision. The way to contest that decision is ultimately by appeal. This Court has jurisdiction over dischargeability and that is a central issue here.

D. <u>Abstention</u>.

If the Court has jurisdiction, it must next decide whether it should abstain from the exercise of it. The doctrine of discretionary abstention is set forth in 28 U.S.C. § 1334(c)(1):

> [N]othing in this section prevents a [bankruptcy] court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

"Permissive abstention is available in core as well as non-core proceedings." *Garland & Lachance Constr. Co. v. City of Keene*, 144 B.R. 586, 594 (D.N.H. 1991). "While it is true that discretionary abstention is normally inappropriate if a matter is a core proceeding, . . . the rule is not inflexible and the Court retains the power to abstain" even if the proceeding is a core proceeding. *Id.*

Section 505(a) of the Code explicitly provides the Court *may* determine the amount or legality of any tax. 11 U.S.C. § 505(a)(1). Use of the word "may" is "indicative of the discretionary nature" to exercise jurisdiction. *Schmidt*, 205 B.R. at 397.

"[W]here the aims of § 505 would not be furthered, discretionary abstention . . . [is] appropriate." *Kohl*, 397 B.R. at 845. There are two principal purposes of section 505. "First, in order to facilitate the bankruptcy goal of expediting the administration of claims against the estate, § 505 was enacted to provide a forum for the speedy resolution of disputed tax claims so as to avoid any delay in the administration of the bankruptcy case." *Id.* (citing *Stevens v. IRS (In re Stevens)*, 210 B.R. 200, 202 (Bankr. M.D. Fla. 1997)). "In addition, Congress also sought . . . to protect creditors from the dissipation of estate assets which could result if creditors were bound by [a] tax judgment which the debtor, due to his ailing financial condition, did not contest." *Kohl*, 397 B.R. at 845 (citing *Northwest Beverage, Inc. v. Illinois Dep't of Revenue (In re Northwest Beverage, Inc.)*, 46 B.R. 631, 635 (Bankr. N.D. Ill. 1985)).

Additionally, many courts consider a non-exclusive list of factors, including:

1. The complexity of the tax issues to be decided;
2. The need to administer the bankruptcy case in an orderly and efficient manner;
3. The burden on the bankruptcy court's docket;
4. The length of time required for trial and decision;
5. The asset and liability structure of the debtor; and
6. The prejudice to the debtor and potential prejudice to the taxing authority.

*In re Galvano*, 116 B.R. 367, 372 (Bankr. E.D.N.Y. 1990).

The Court can reach a decision quicker than the Tax Court. The parties have already exchanged pleadings. The Court set a trial date for November 15, 2019.[5] There is no indication of when, if at all, the Tax Court would ultimately decide this case.

The speedy resolution of the tax dispute furthers the purposes underlying section 505. There are no other pending adversaries in the bankruptcy case. Resolving this adversary provides closure to the case. Given the dischargeability at issue, a quicker resolution allows the Debtor to achieve the underlying purposes of the Code: a fresh start and the repayment of creditors.

---

[5] It is interesting to note that, in the original Motion to Dismiss, the IRS intimated a decision in the Tax Court would likely be speedy stating, "The Tax Court is scheduled to next sit in Milwaukee, WI on March 25, 2019. But given the discovery necessary to properly litigate the amount of . . . tax liabilities in this Court, it is likely that a trial would not take place far ahead of that date." Then, however, when faced with setting a trial date in this Court, the IRS pleaded a need for discovery delaying a trial until the fall or early winter of 2019.

Abstention may result in the Debtor litigating this dispute twice. If the Tax Court finds the returns were fraudulent, the Debtor could still move for a nondischargeability determination. The Court would then analyze whether collateral estoppel applies. If it does not, the Debtor litigates the same set of facts twice. There is no guarantee a Tax Court determination warrants application of collateral estoppel. Nor are there any actual findings of fact or conclusions of law from a Tax Court that could be accepted as preclusive in this Court. It is also possible there may never be findings. Instead, it is apparently the position of the IRS that the determination of the Revenue Agent and the mere issuance of a Notice of Deficiency should stand as conclusively determining that all the elements of fraud under section 523 are present. What *is* guaranteed is that this Court can make a final determination about the amount of taxes owed and the dischargeability of it.

Finally, the IRS suggests this Court should abstain because any decision by this Court might be subject to review on the issue of jurisdiction. Appeals are always possible. The Court has an obligation to decide issues brought before it where it concludes it has jurisdiction. Whether a decision is later overturned on jurisdictional grounds and relitigated is simply a part of our adversarial system. Here, dischargeability is squarely within the jurisdiction of this Court. The potential of an appeal is not a basis to refrain from exercising that jurisdiction. Any findings of fact and conclusions of law of this Court can also be treated as recommendations to the District Court to address that potential question.

22

E. <u>Abeyance</u>.

Trial courts have the authority to stay litigation where such a stay is a proper exercise of discretion. *Rhines v. Weber*, 544 U.S. 269, 276 (2005) (citing other Supreme Court holdings). The power to stay proceedings is incidental to the power inherent in every court to control the disposition of cases on its docket. *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

A stay may be appropriate if resolving issues in another case would help resolve the proceeding sought to be stayed. *CMAX, Inc. v. Hall*, 300 F.2d 265, 269 (9th Cir. 1962). There is no requirement the parties or issues in the two cases be identical. *Landis*, 299 U.S. at 254. Indeed, the purpose of granting a stay is often to avoid duplicating a proceeding already pending in another court. *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1551–52 (11th Cir. 1986).

The Supreme Court has historically disfavored staying litigation in one case just because litigation in another case may decide the rights of litigants in the former case. *Landis*, 299 U.S. at 255. As Justice Cardozo once stated:

> [T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rules of law that will define the rights of both. . . . There are indeed opinions, though none of them in this court, that give color to a stricter rule. Impressed with the likelihood or danger of abuse, some courts have stated broadly that, irrespective of particular conditions,

> there is no power by a stay to compel an unwilling litigant to wait
> upon the outcome of a controversy to which he is a stranger.

*Id.* at 255 (citations omitted). Justice Cardozo also opined that "[e]specially in cases of extraordinary public moment, [a litigant] may be required to submit to delay not immoderate in extent and not oppressive in its consequences *if* the public welfare or convenience will thereby be promoted." *Id.* at 256 (emphasis added).

Bush was fully briefed and argued in April 2017 and awaits an opinion. As of 2017, the median time interval for bankruptcy cases before the Seventh Circuit from filing the last brief to a final disposition was 4.2 months.[6] Timing of a decision in that case is unknown.

There is also no guarantee *Bush* will resolve the jurisdiction issue here. The issue in *Bush* is whether a bankruptcy court has jurisdiction to determine the amount of tax penalties the debtors will continue to owe after their bankruptcy discharge. In *Bush*, the sole issue is the *amount* of the tax liability. Dischargeability is not at issue. It is conceded that, whatever the amount, the liability is not dischargeable. Thus, it does not address determinations under 11 U.S.C. § 523.

Here, dischargeability is at issue. This is an important difference, as dischargeability is a right existing only in bankruptcy. Indeed, in *Bush* the district court recognized the debtors were "not entitled to have [the

---

[6] The Judicial Business of the United States Courts of the Seventh Circuit 18 (Dec. 31, 2017), www.ca7.uscourts.gov/annual-report/2017_report.pdf.

determination of tax liability] *(as opposed to the issue of dischargeability)* made as part of their bankruptcy proceeding." *Bush v. United States of Am.*, *Brief for the Appellee*, No. 16-3244, 2017 WL 1391481, at *13 (7th Cir. Apr. 6, 2017) (emphasis added).

Abstention is not warranted under the facts in this case.

F. <u>Withdrawal of the order of reference</u>.

The Motion to Reconsider briefly references withdrawal of the reference. It does so in the context of a footnote suggesting that it is considering moving to withdraw the reference if this case goes "beyond preliminary matters."

A bankruptcy court may make recommendations to the district court about whether it should withdraw the order of reference in a case. *In re New Energy Corp.*, No. 12-33866, 2013 WL 1192774 (Bankr. N.D. Ind. Mar. 14, 2013) (citation omitted). *See also* 28 U.S.C. § 157(d) (authorizing a district court to "withdraw, in whole or in part, any [bankruptcy] case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."). The district court has broad discretion in determining whether to withdraw a reference based on cause. *Grochocinski v. LaSalle Bank Nat'l Ass'n (In re K & R Express Sys., Inc.)*, 382 B.R. 443, 446 (N.D. Ill. 2007). That said, withdrawal is the exception, not the rule. *Id.*

One of the seminal cases on withdrawal of the reference came from the Fifth Circuit. In *Holland Am. Ins. Co. v. Succession of Roy*, the Fifth Circuit held that in determining whether a movant has shown cause to withdraw the

reference, a district court should consider several factors. 777 F.2d 992, 999 (5th Cir. 1985).

Whether the adversary involves a core or non-core proceeding is first among the factors. Here, the issue involves dischargeability of potential tax and penalties—a core proceeding.

Another factor is honoring a plaintiff's choice of forum. "A plaintiff's choice of forum is generally entitled to great deference." *Hellas Telecomms. (Luxembourg) II SCA v. TPG Capital Mgmt., L.P. (In re Hellas Telecomms. (Luxembourg) II SCA)*, 555 B.R. 323, 346 (Bankr. S.D.N.Y. 2016). "[U]nless the balance [of factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

The effect of the extension of time to answer, the Motion to Dismiss, and the Motion to Reconsider—while all permitted and proper—is that the time for the Jungs to seek review of or challenge any assessment in Tax Court may have expired. This is particularly ironic given the initial argument that "[t]he Tax Court is scheduled next to sit in Milwaukee, WI on March 25, 2019. But given the discovery necessary to properly litigate the amount of Jung's 2008-2013 tax liabilities in this Court, it is likely that a trial would not take place far ahead of that date." ECF no. 15 at 10. This suggests that dischargeability is not a foregone conclusion and that evidence would be needed to litigate whether there was fraud.

Just as the potential that an appeal of a decision of this Court might be taken is not a basis to abstain, the possibility a motion for withdrawal of the reference could be made is not a basis to abstain. So the suggestion in the footnote is disregarded as a matter to be considered or decided by this Court.

### CONCLUSION

The Motion to Reconsider is denied. There is no change in circumstance warranting revisiting the Court's prior decision. Dischargeability is a core proceeding and still at issue. There are no compelling factors supporting abstention. Nor will the Court grant abeyance until resolution of the *Bush* case.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

An order consistent with this decision will be entered.

Dated:  July 2, 2019

BY THE COURT:

_____

Hon. Catherine J. Furay
U.S. Bankruptcy Judge